**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:18-cv-01434 ) |
| v. | ) <u>CLASS ACTION</u> ) |
| THE FINISH LINE, INC., GLENN S. LYON, TORRENCE BOONE, WILLIAM P. CARMICHAEL, RICHARD P. CRYSTAL, FAISAL MASUD, STEPHEN GOLDSMITH, CATHERINE A. LANGHAM, and SAMUEL M. SATO, | ) <u>JURY TRIAL DEMANDED</u> ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on March 26, 2018 (the "Proposed Transaction"), pursuant to which The Finish Line, Inc. ("Finish Line" or the "Company") will be acquired by JD Sports Fashion plc ("Parent") and Genesis Merger Sub, Inc. ("Merger Sub," and together with Parent, "JD Sports Fashion").

2. On March 25, 2018, Finish Line's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with JD Sports Fashion. Pursuant to the terms of the Merger Agreement, Finish Line stockholders will receive $13.50 per share in cash for each share of Finish Line stock that they own.

3. On April 24, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) because the claims asserted herein arise under Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder and Section 20(a) of the 1934 Act.

6. This Court has personal jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under Section 27 of the 1934 Act (15 U.S.C. § 78aa), as well as 28 U.S.C. § 1391(b), because (i) the conduct at issue took place and had an effect in this District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Finish Line common stock.

9. Defendant Finish Line is an Indiana corporation and maintains its principal executive offices at 3308 North Mitthoeffer Road, Indianapolis, Indiana 46235. Finish Line's common stock is traded on the NasdaqGS under the ticker symbol "FINL."

10. Defendant Glenn S. Lyon ("Lyon") has served as Chairman of the Board of Finish Line since September 2016.

11. Defendant Torrence Boone ("Boone") has served as a director of Finish Line since August 2011.

12. Defendant William P. Carmichael ("Carmichael") has served as a director of Finish Line since July 2003.

13. Defendant Richard P. Crystal ("Crystal") has served as a director of Finish Line since October 2009.

14. Defendant Faisal Masud ("Masud") has served as a director of Finish Line since September 2017.

15. Defendant Stephen Goldsmith ("Goldsmith") has served as a director of Finish Line since July 1999.

16. Defendant Catherine A. Langham ("Langham") has served as a director of Finish Line since April 2006.

17. Defendant Samuel M. Sato ("Sato") has served as Chief Executive Officer ("CEO") of Finish Line since February 2016. Sato previously served as President of Finish Line beginning in October 2014.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Finish Line (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of March 23, 2018, there were approximately 41,298,819 shares of Finish Line common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26. Finish Line is a premium retailer that carries shoes, apparel, and accessories.

27. Finish Line runs approximately 930 branded locations in U.S. malls and shops inside Macy's department stores. The Company employs approximately 13,000 associates.

28. On March 25, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with JD Sports Fashion.

29. Pursuant to the terms of the Merger Agreement, Finish Line stockholders will receive $13.50 per share in cash for each share of Finish Line stock that they own.

30. According to the press release announcing the Proposed Transaction:

Athletic retailer The Finish Line, Inc. (NASDAQ:FINL) announced today that it has entered into a merger agreement providing for JD Sports Fashion Plc (LSE: JD) to acquire 100% of the issued and outstanding Finish Line shares at a price of $13.50 per share in cash representing an aggregate deal value of approximately $558 million. JD is the leading European retailer of sports, fashion and outdoor brands. . . .

Transaction Highlights

• The terms of the merger represent a premium of 28 percent for Finish Line shareholders compared to the closing price of Finish Line's shares of $10.55 as of March 23, 2018.

• This provides an excellent strategic fit for Finish Line and JD. Finish Line moves into a stronger position to compete as part of a global enterprise that leads in the industry. JD gains a significant physical and online retail presence with direct access in the US which they have long identified as a highly attractive growth opportunity.

• Finish Line and JD together create a leading global, premium, multichannel

retailer of sports, fashion and outdoor brands who embraces the latest online and in-store digital technology.

• The combined purchasing power of Finish Line and JD, coupled with the strategic alignment with major international sportswear brands in North America, is expected, on completion, to enable the enlarged group to bring a highly differentiated multi-channel retail proposition to the US market.

• Upon closing of the agreement, the Finish Line executive team will continue their involvement with the business.

The merger agreement is subject to Finish Line and JD shareholder approval of the merger, the receipt of all required regulatory approvals, and the satisfaction of other customary conditions to closing. The expected timeline to close on this agreement is no earlier than June 2018.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

31.   Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32.   The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33.   The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisors, PJ SOLOMON ("PJ") and Houlihan Lokey Capital, Inc. ("Houlihan").

34.   With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) the line items used to calculate EBITDA and EBIT; (ii) unlevered free cash flow and the line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

35.   With respect to PJ's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the unlevered after-tax free cash flows and constituent line items; (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying the discount

6

rates applied by PJ; and (iv) the projected tax rate provided by Finish Line.

36. With respect to PJ's Analysis of Selected Publicly Traded Companies, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by PJ in the analysis.

37. With respect to PJ's Analysis of Selected Precedent Transactions, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by PJ in the analysis.

38. With respect to PJ's illustrative analysis of the implied present value per common share, the Proxy Statement fails to disclose: (i) the forecasted changes in total cash; and (ii) the inputs and assumptions underlying the discount rate applied by PJ.

39. With respect to Houlihan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected unlevered, after-tax free cash flows and constituent line items; (ii) the terminal values for Finish Line; and (iii) the inputs and assumptions underlying the discount rates applied by Houlihan.

40. With respect to Houlihan's Selected Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Houlihan in the analysis.

41. With respect to Houlihan's Historical Premia Review, the Proxy Statement fails to disclose the transactions observed by Houlihan as well as the premiums paid in such transactions.

42. With respect to Houlihan's Selected Transactions Analysis, the Proxy Statement fails to explain Houlihan's basis for ultimately determining not to reply upon such analysis while PJ did.

43. The disclosure of projected financial information is material because it provides stockholders with a basis to understand the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Additionally, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Finish Line's Reasons for the Merger; (iii) Opinions of the Finish Line Special Committee's Financial Advisors; and (iv) Certain Projected Financial Information.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**(On Behalf of Plaintiff and the Class Against Finish Line and the Individual Defendants for Violations of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Finish Line is liable as the issuer of these statements.

48. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**(On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the 1934 Act)**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Finish Line within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as

officers and/or directors of Finish Line and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Section 14(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder, and/or Section 20(a) of the 1934 Act;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 9, 2018

Respectfully submitted,

RILEY WILLIAMS & PIATT, LLC

By: /s/ *James A. Piatt*
William N. Riley (#14941-49)
James A. Piatt (#28320-49)
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
(317) 633-5270
Fax: (317) 426-3348
wriley@rwp-law.com
jpiatt@rwp-law.com
*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800